**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel T Doria, | No. CV-23-08112-PCT-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Yelp Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 14). Plaintiff filed a response (Doc. 16), to which Defendant replied (Doc. 18.) After considering the parties' arguments and relevant case law, the Court will grant Defendant's Motion.

**I.      BACKGROUND**

This case arises from Plaintiff's former employment with Defendant as an Account Executive. Plaintiff worked at Yelp from January 2022 to May 2022. (Doc. 1 at 8.) Following his termination and subsequent conversations with Defendant, Plaintiff filed a Complaint. (Doc. 1.) Plaintiff has since amended his Complaint twice, with the current operative Complaint being the Second Amended Complaint ("SAC"), which alleges that Defendant violated the Americans with Disabilities Act ("ADA") and the Arizona Civil Rights Act ("ACRA"). (Doc. 12; Doc. 13 at 9–10 ¶¶ 45–50.) In the SAC, Plaintiff alleges that he internally reported fraud regarding Yelp's scripted sales model and tuition reimbursement program. (Doc. 13 at 4 ¶ 16, 5 ¶ 19.) Plaintiff asserts that Defendant

brushed off his complaints and threatened to fire him. (*Id.* at 4 ¶ 17; 5 ¶ 20.) Plaintiff claims that Defendant's response sent him into a depressed and paranoid episode. (*Id.* at 4 ¶ 17.) In turn, Plaintiff requested an accommodation, which he alleges was denied. (*Id.* at 5 ¶¶ 21–22.) Plaintiff then formally requested leave through short term disability, which was granted. (*Id.* at 5–6 ¶¶ 24–25.) However, Defendant terminated Plaintiff's employment. (*Id.* at 7 ¶ 36.)

Shortly after terminating Plaintiff, Defendant offered Plaintiff a Separation Agreement ("the Agreement"). (Doc. 14-2 at 2–8.) Initially, Defendant offered to pay Plaintiff severance equivalent to four weeks of pay in exchange for signing the Agreement. (*Id.* at 3.) However, Plaintiff rejected this initial offer. (*Id.*) After further negotiations, Defendant increased its offer to six weeks of pay and sent the revised Agreement to Plaintiff on June 21, 2022. (*Id.*) Plaintiff then signed the Agreement on June 22, 2022. (*Id.*) The Agreement states, in relevant part:

> You hereby generally and completely release Yelp and its predecessors, successors, affiliates, parent and subsidiary entities, as well as each of their current and former directors, officers, employees, shareholders, partners, agents, attorneys, insurers, affiliates and assigns (collectively, the "Released Parties") of and from any and all claims, liabilities and obligations, both known and unknown, that arise out of or are in any way related to events, acts, conduct or omissions that occurred prior to or on the date that you sign this Agreement (collectively, the "Released Claims") . . .
>
> The Released Claims include, but are not limited to: (i) all claims arising out of or in any way related to your employment with Yelp, or the termination of that employment . . . [including] all federal, state and local statutory claims, including, without limitation, claims for discrimination, harassment, retaliation . . . or other claims arising under . . . the federal Americans with Disabilities Act [or] the Arizona Civil Rights Act. . . .

(*Id.* at 6–7.) Both parties signed this agreement. (*Id.* at 8.) However, next to his signature, Plaintiff included the words "in protest." (*Id.* at 8.) In response, Defendant contacted Plaintiff via email to clarify that the Agreement (1) is a final, binding, and enforceable contract; (2) that Plaintiff had seven days to decide whether he wanted to sign it; (3) that

- 2 -

Plaintiff entered into the Agreement of his own free will, and (4) that Plaintiff's inclusion of "in protest" does not change any of the above facts. (*Id.* at 10.) Plaintiff replied "Yep, that's all understood." (*Id.*)

Plaintiff also received a Dismissal and Notice of Rights letter from the United States Equal Employment Opportunity Commission ("EEOC"). (Doc. 15-2 at 2–3.) This letter, issued on February 21, 2023, required Plaintiff to file his suit within 90 days of receiving it. (*Id.*) Plaintiff received a similar Notice of Charge of Discrimination and Charge of Discrimination from the Arizona Attorney General's Civil Rights Division in regard to his ACRA claim. (Doc. 13-1.) This letter gave Plaintiff one year from the date he filed his charge with the Civil Rights Division to file a lawsuit. (*Id.*) Plaintiff filed this lawsuit on June 14, 2023. (Doc. 1.) Defendant now seeks to dismiss the SAC. (Doc. 14.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction" and may only hear cases as authorized by the Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court has subject-matter jurisdiction over claims that "aris[e] under the Constitution, laws, or treaties of the United States" and over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" diverse parties. 28 U.S.C. §§ 1331, 1332(a). Because our jurisdiction is limited, it is to be presumed that a cause lies outside of it, and the burden of establishing jurisdiction is on the party asserting it. *Kokkonen*, 511 U.S. at 377.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In this circumstance, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in the plaintiff's favor, then "determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane*

*Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* In a facial attack, the Court's inquiry is confined to the allegations in the complaint, while a factual attack permits the court to look beyond the complaint. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2004).

Further, to survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This requirement is met if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations

of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

### III. DISCUSSION

The Court will discuss three preliminary issues, then turn to the merits of the Motion.

#### A. Sur-Reply

Plaintiff then filed a response to Defendant's reply brief. (*See* Doc. 19). Plaintiff has effectively attempted to file a sur-reply—an additional response to the moving party's reply. Local Rule 7.2 permits motions, responses, and replies. *See* LRCiv 7.2 (a), (c)–(d). Sur-replies are impermissible, as they are not contemplated by the local rules. *See Armenta v. Spencer*, No. CV-16-00697-TUC-DCB, 2018 WL 4698648, at *1 (D. Ariz. Oct. 1, 2018) ("There is no provision for Sur-Replies."). Therefore, the Court will strike this response (Doc. 19) in its entirety.

#### B. Judicial Notice

Defendant also filed a Request for Judicial Notice in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 15.) This request asks the Court to take judicial notice of the Notice of Charge of Discrimination and Charge of Discrimination that Plaintiff filed with the Arizona Civil Rights Division ("ACRD"), as well as the Letter and Dismissal and Notice of Rights from the EEOC. (*Id.* at 1–2.) This letter from the EEOC is better known as a "right to sue" letter.

Generally, judicial notice is appropriate for "records and reports of administrative bodies." *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (cleaned up). Courts regularly take judicial notice of certain EEOC

documents. *See, e.g.*, *Reed v. Cognizant Tech. Sols.*, 2020 WL 3268691, No. CV-20-00061-PHX-SMB, at *1 n.1 (D. Ariz. June 16, 2020) (taking judicial notice of "EEOC complaint and the right-to-sue letter"); *Mazzorana v. Emergency Physicians Med. Grp., Inc.*, No. 2:12-CV-1837 JCM (PAL), 2013 WL 4040791, at *5 (D. Nev. Aug. 6, 2013) (taking judicial notice of EEOC charge). Additionally, the Court may consider matters of judicial notice without converting this Motion into a motion for summary judgment. *Ritchie*, 342 F.3d at 908.

Here, both documents are communications from administrative bodies to Plaintiff that allowed him to file these claims. Moreover, their accuracy is not in dispute. Therefore, the Court will take judicial notice of Plaintiff's Notice of Charge of Discrimination and Charge of Discrimination that Plaintiff filed with the Arizona Civil Rights Division ("ACRD") and the right to sue letter from the EEOC. (Doc. 15-1; Doc. 15-2.)

### C. Local Rule 12.1(c)

In his response, Plaintiff asserts that Defendant failed to meet and confer in good faith regarding this Motion in violation of Local Rule 12.1(c). (Doc. 16 at 5.) This rule requires the moving party to include a certification that before filing the motion, they "notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party." LRCiv. 12.1(c). In their reply, Defendant included the email correspondence between the parties conferring on this topic. (Doc. 18-1.) The Court has reviewed this correspondence and Defendant's initial certification. (*Id.*; Doc. 14-1.) The Court finds that Defendant complied with the requirements of Local Rule 12.1(c). Therefore, the Court will not strike Defendant's Motion.

### D. The Agreement

Defendant primarily argues that through the Agreement, Plaintiff released all claims asserted in his SAC. (Doc. 14 at 10–12.) Therefore, Defendant contends that dismissal is required under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). (*Id.*) Plaintiff counters that he was forced to "sign away [his] rights to a claim the company had good

- 6 -

1    cause to believe [he] would later bring." (Doc. 16 at 3.)  Plaintiff also argues that he told
2    Defendant he would not waive his rights and that the initial offer of payment was given to
3    him "without conditions." (*Id.*)  In sum, Plaintiff states he signed the Agreement "in
4    protest, knowing that it is illegal to extort a waiver of rights in exchange for labor already
5    owed." (*Id.*)

6    Plaintiff does not dispute that he signed the Agreement.  (*See* Doc. 16.)  He also
7    does not dispute the Agreement's meaning.  The only argument Plaintiff appears to make
8    is that the Agreement lacked consideration due to his disagreement over the nature of the
9    payment. (Doc. 16 at 3.)  However, this argument is undercut by the facts.  First, the parties
10   negotiated the terms of this payment and agreed to six weeks of pay.  Once this term was
11   reached, Plaintiff signed the Agreement the following day.  (*See* Doc 14-2 at 8.)  This
12   negotiation period and the email correspondence both show that Plaintiff was not coerced
13   into signing this Agreement.  Additionally, Plaintiff's inclusion of the words "in protest"
14   does not render the Agreement unenforceable.  Plaintiff appears to have known this, as he
15   replied that he "understood" that writing "in protest" next to his signature did not change
16   the enforceability of the Agreement. (*Id.* at 10.)

17   In short, Plaintiff voluntarily entered into the Agreement and knew its effect on his
18   claims.  This Agreement constitutes a valid release of the claims at issue, and therefore
19   dismissal under Rule 12(b)(6) is required.  *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669
20   F.3d 1005, 1008, 1014–20 (9th Cir. 2012) (affirming a Rule 12(b)(6) dismissal pursuant to
21   an enforceable release); *Marder v. Lopez*, 450 F.3d 445, 447–54 (9th Cir. 2006) (same).
22   Therefore, the Court will dismiss these claims, and in turn the SAC, with prejudice.
23   Further, due to this dismissal under Rule 12(b)(6), the Court will not analyze potential
24   dismissal under Rule 12(b)(1).

25   **E.  Time Barred Claims**

26   As discussed, a party has 90 days to file a lawsuit after receiving a right to sue letter
27   from the EEOC.  Plaintiff was required to file his initial Complaint within ninety days of
28   receiving notice of the EEOC's decision.  *Surrell v. California Water Service Co.*, 518 F.3d

1097, 1104 (9th Cir. 2008) ("Once a person receives an EEOC right-to-sue letter, she has 90 days to file suit") (citing 42 U.S.C § 2000e-5(f)(1)); *see also Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 383 (9th Cir. 1997) ("This ninety-day period is a statute of limitations. Therefore, if a claimant fails to file the civil action within the ninety-day period, the action is barred.") (cleaned up). Here, Plaintiff filed his initial Complaint on June 14, 2023. (Doc. 1.) This was 113 days after he received his right to sue letter from the EEOC, which was issued on February 21, 2023. (Doc. 15-2.) This also means that the Complaint was filed at least 20 days after his 90-day period to file ADA claims. (*Id.*) Accordingly, Plaintiff's ADA claims are untimely.

An untimely claim is not cognizable, and therefore it must be dismissed under Rule 12(b)(6). *See Hoover v. Swift Transportation Co.*, No. CV-18-03314-PHX-JAT, 2019 WL 6135122, at *2 (D. Ariz. Nov. 19, 2019) (discussing dismissal under this Rule "when it is clear from the face of the complaint that a plaintiff's claims fall outside the applicable statute of limitations"); *see also Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Plaintiff attempts to circumvent this issue by arguing that his claims are timely based on the ACRD's Notice of Right to Sue. (Doc. 16 at 4.) However, this notice has no effect on Plaintiff's ADA claims. As the Ninth Circuit has noted, a state agency's right to sue letter does not trigger the 90-day period to sue under the ADA—*only* a right to sue letter from the EEOC has this effect. *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1111 (9th Cir. 2018).

In short, Plaintiff's ADA claims are time-barred. To the extent these claims are not barred by the Agreement, they are untimely and therefore dismissed pursuant to Rule 12(b)(6).

### IV.  CONCLUSION

For the above reasons,

**IT IS HEREBY ORDERED granting** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 14).

**IT IS FURTHER ORDERED striking** Plaintiff's sur-reply (Doc. 19).

1   **IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment
2   consistent with this Order and close this case.
3   Dated this 22nd day of April, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge